PETRIE, APPELLANT, *v.* FOREST HILLS SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES.

(No. C-810840—Decided July 28, 1982.)

*Biegel, Kirkland & Berger Co., L.P.A., Mr. James R. Kirkland* and *Ms. Elaine Stoermer,* for appellant.

*Ennis & Roberts Co., L.P.A.,* and *Mr. George E. Roberts, III,* for appellees.

KEEFE, P.J. Plaintiff-appellant, Marilou Petrie, is presently a Turpin High School Spanish teacher under continuing contract with the Forest Hills School District of Hamilton County, and has been for a number of years. On the morning of January 31, 1980, while driving to school, she was involved in an automobile accident at an intersection in the village of Newtown, Hamilton County. Representatives of the Newtown Police Depart-

ment handled the investigation of the accident. Marilou Petrie was not pleased with the accident investigation by the Newtown Police Department, and she allegedly made known her feelings of displeasure to students in one of her Spanish classes. As indicated, the targets of her denunciation apparently were Newtown officialdom and the police department. Her allegedly derogatory remarks during a class session soon prompted a number of complaints about Miss Petrie's criticism. The complaints came to Gerald Chance, an employee of the Forest Hills School District Board of Education serving in the capacity of principal of Turpin High School. Principal Chance investigated, and after talking with many persons, including Miss Petrie and over twenty students, ultimately issued a written reprimand to her, on or about February 25, 1980. Plaintiff filed suit against the board of education and Chance on March 5, 1980, with an amended complaint later, seeking principally money and, somewhat indirectly, removal of the reprimand from her personal file. Defendants submitted a motion for summary judgment on July 2, 1981 which the court of common pleas granted. The plaintiff then filed her notice of appeal.

Significant portions of the reprimand from Principal Chance to Miss Petrie follow:

"I reviewed with Miss Petrie what had transpired during the past 48 hours * * *.

"At that point in the conversation Miss Petrie interrupted saying that she made the statement in class, that the police chief of Newtown was corrupt — and I could fire her if I wanted to. I explained to Miss Petrie that firing her was not the purpose of this conference — but I was trying to review what had happened during the last 48 hours and hear her side of the story.

"It was at this point that I asked Miss Petrie if she referred to the police in Newtown as 'Pigs.' Her reply was 'I prob-ably used that term.' Miss Petrie wanted to relate why she made these statements — because of her automobile accident. I explained to Miss Petrie that the events surrounding the accident were not germane to our discussion. She insisted that the accident was germane to the classroom incident and discussed some of its events.

"At this point in the conversation, I explained to Miss Petrie that regardless of her feeling about the Newtown Police as to how they handled her accident that statements made in class about the police or the village of Newtown, depicting them in a derogatory manner, was [sic] inexcusable.

"After a review of this incident in Miss Petrie's classroom, it is my feeling that Miss Petrie used poor judgment and acted in a manner unbecoming to the teaching profession; specifically, making derogatory statements about the Chief of Police and his department, and the Village of Newtown. These statements are personal opinions derived at as a result of an accident in the village of Newtown and have nothing to do with the instruction of Spanish.

"Incidents of this type must not happen in the future at Turpin High School. Relate personal feelings of this nature to the individuals involved through the proper channels — not in the classroom. The incident is serious enough to warrent [sic] this written reprimand."

Appellees rate this litigation as absurd and frivolous, contending that "this case concerns nothing more than notifying a teacher that she should not use Spanish class time to discuss automobile accidents and police handling of automobile accidents." However, appellant advances two assignments of error: first, the trial court erred generally in granting summary judgment in favor of the appellees, and second, the court below erred specifically in granting summary judgment to the appellees "considering the legitimate First Amendment issue pres-

ent here." We dispose of the two assignments in reverse order. Assignment two is overruled. We believe appellees acted lawfully, and did not violate any constitutionally protected right of appellant in issuing her a written reprimand for expending classroom instruction time in a Spanish class to discuss in some detail personal experiences and feelings unrelated to the subject for which the class was scheduled. We recognize that the power of local school boards to discipline is subject to constitutional limitations and may not be exercised in an unconstitutionally arbitrary or discriminatory manner. So also is there the rule of law that a teacher may be disciplined or discharged for failure to comply with reasonable regulations which are adopted for the proper administration of the schools. 68 American Jurisprudence 2d Schools 499, Section 166 (1973). There was no dismissal here, no forfeiture of wages or the like, and the reprimand seems to us to be couched in reasonable and moderate language. Therefore we overrule assignment two.

We next review assignment one in which appellant generally attacks the summary judgment for appellees. Following the reprimand, Miss Petrie requested that an investigation of the contents of her personal information file be made. This she was authorized to do pursuant to R.C. 1347.09. (The sections of R.C. Chapter 1347 which apply to the instant appeal are those which became effective in *1977*. Counsel agree that the statutory changes made January 23, 1981, do not apply here.) An investigation was conducted, one in which Miss Petrie fully participated, following which the appellee school board through its agents decided that the reprimand, *supra,* should remain in the teacher's file. She then prepared a lengthy rebuttal statement as to the information in her file which she disputed, and this rebuttal statement was placed in her file together with a copy of a polygraph report which she asked be included. We

conclude that R.C. Chapter 1347, commonly called the Ohio Privacy Act, has been complied with in all respects by the defendants-appellees with respect to appellant and thus there is no genuine issue as to any material fact. The moving parties were entitled to judgment as a matter of law. We note with particularity the correctness of the summary judgment with respect to R.C. 1347.10, pertinent sections of which provide as follows:

"(A) A person *harmed* by the use of personal information relating to him that is maintained in a personal information system may recover damages in a civil action from any person who directly and proximately caused such harm * * *. (Emphasis added.)

"* * *

"(B) Any person or state or local agency that violates or proposes to violate any provision of Chapter 1347 of the Revised Code may be enjoined by any court of competent jurisdiction. * * *"

On the state of the record, reasonable minds can come only to the conclusion that appellant has not been harmed. It is positively undisputed that Miss Petrie at the present time has a continuing contract with the Forest Hills School District and she does not allege that her salary has in any way been reduced or jeopardized to date. This is made clear in Miss Petrie's deposition of May 15, 1980. With respect to section (B), we emphasize that as a matter of law R.C. Chapter 1347 was not violated by either appellee.

We elect to comment upon the following language in appellees' brief:

"The Act [Ohio Privacy Act] could not be more clear with respect to the remedy for an individual who believes material in his or her personnel [*sic*] file is not accurate. The remedy provided in the Act is the right to have rebuttal statements and information placed in the individual's personnel [*sic*] file. For obviously good reason, the courts are entirely kept out of this remedial procedure. If the courts are overworked and court dockets overcrowd-

ed now, they would be absolutely ground to a halt if the courts were open to every public employee who has a gripe about something which has been placed in his or her personnel [*sic*] file."

It is manifest from the provisions of R.C. 1347.10, some of which appear above, that the courts are *not* "entirely kept out of this remedial procedure." We do believe, however, that R.C. 1347.10 provides the principal grounds for recourse to the courts so far as the Ohio Privacy Act is concerned. Regardless, whatever may be the full scope of permissible judicial review under the said Act — a determination not necessary to this decision — we judge that the General Assembly did not provide for court review of a situation in which an agency in good faith maintains that such and such occurred or was said, and its employee, also in good faith, disputes it, in the absence of mistake, fraud, collusion or arbitrariness on the part of the agency. Cf. *State, ex rel. Ohio High School Athletic Assn.,* v. *Judges* (1962), 173 Ohio St. 239 [19 O.O.2d 52]. If and when the sole controversy between the agency and employee is a difference in versions of the contention, as here, seemingly the Act provides to the employee merely the right to a fair investigation and to include in his or her file an explanation or protest pursuant to R.C. 1347.09.

The error assignments are overruled. We affirm.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.