[Cite as *Longmire v. Danaci*, 2020-Ohio-3704.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Eric Longmire et al., :

    Plaintiffs-Appellees, :

                                        No. 19AP-770

v. : (C.P.C. No. 17CV-2624)

Ozgun Danaci, : (REGULAR CALENDAR)

    Defendant-Appellant. :

D E C I S I O N

Rendered on July 14, 2020

**On brief:** *Zeehandelar, Sabatino & Associates, LLC,* and *Alessandro Sabatino, Jr.,* for appellees. **Argued:** *Alessandro Sabatino, Jr.*

**On brief:** *Stanley L. Myers,* for appellant. **Argued:** *Stanley L. Myers.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, Ozgun Danaci, appeals from the judgment of the Franklin County Court of Common Pleas overruling objections to the magistrate's ruling in favor of plaintiffs-appellees, Eric Longmire and Berrin Ergun-Longmire, for unjust enrichment in the amount of $27,409.37. For the reasons that follow, we affirm the judgment of the trial court.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On March 16, 2017, appellees filed a complaint seeking judgment against appellant for unjust enrichment and breach of contract. In their complaint, appellees generally alleged that an oral contract was formed between the parties, and appellant had

failed to repay appellees for tuition and living expenses while he was enrolled at the University of Dayton. Appellees alleged appellant had agreed to repay the loan on a monthly basis after he began full-time employment. Appellant filed his answer on April 14, 2017.

{¶ 3} On February 13, 2018, appellant filed a motion for partial summary judgment. Appellant argued appellees' breach of contract claim failed as a matter of law because the oral contract was barred under the statute of frauds codified in R.C. 1335.05. In their memorandum contra, appellees argued there was enough written documentation between the parties over email to meet the writing requirements imposed by the statute of frauds.

{¶ 4} On June 18, 2018, the trial court granted appellant's motion for partial summary judgment dismissing the breach of contract claim. The trial court reasoned that "the e-mails exchanged between Plaintiff Eric Longmire and Defendant in November of 2013, more than two years after the alleged making of the oral agreement, do not satisfy the requirements of a writing pursuant to R.C. §1335.05." (June 18, 2018 Decision & Entry at 9.) The trial court concluded that while the breach of contract claim was barred under the statute of frauds, appellees could proceed on their unjust enrichment claim.

{¶ 5} The trial court referred this matter to a magistrate for a bench trial pursuant to Civ.R. 53 and Loc.R. 99.02. A bench trial commenced on December 19, 2018. All parties appeared and were represented by counsel. The trial included live testimony from appellees, as well as appellant. The testimony of Fotos Akkus, appellant's ex-girlfriend, was presented by deposition. The trial produced the following facts.

{¶ 6} Appellant is a Turkish citizen and the nephew of appellees. In 2009, appellant began discussions with appellees concerning his desire to pursue a graduate degree in the United States. Appellant began to take English courses and sat for the G.R.E. exam.

{¶ 7} In April 2011, Berrin met with appellant in Turkey during a visit with her sister. Appellant's girlfriend at the time, Akkus, also attended the meeting. The parties agree Berrin made an offer to assist appellant with the tuition and living expenses while he pursued his graduate education. Appellant testified he understood Berrin's offer to pay for tuition and living expenses as a gift. Akkus testified she also heard Berrin state something

to that effect.  Berrin denies she ever offered the money as a gift, and "[f]rom the beginning" she made it clear that "[a]s soon as you start to work, you will pay me back."  (Tr. at 72-73.)

{¶ 8}  Over the next few months, the parties worked together on letters to the University of Dayton and the U.S. Consulate for appellant's student visa.  In August 2011, appellant moved to the United States to start his graduate program, initially living with appellees.  Eric testified when appellant arrived, he made it clear that the money would need to be repaid.  Berrin also told appellant that the money was a loan, stating "I told him, of course, we trust you that you will pay us back."  (Tr. at 99.)  Appellant denies any such conversations occurred.  Around the start of his graduate program, appellant inherited some money and became less reliant on appellees for his living expenses.  Even though appellant received an inheritance, appellees still would "send [appellant] some money when [his] budgeted amount went over."  (Tr. at 251.)

{¶ 9}  There is no evidence that the parties ever codified the terms of the agreement in a written contract.  Despite no written agreement, appellees testified they made it clear from the start and during appellant's time in school that the money would need to be repaid. Berrin testified appellant would put his hand on her shoulder and say, "Auntie, I will pay you back."  (Tr. at 110.)  Appellees both testified that appellant would repay them the loan amount within two years of obtaining full-time employment.

{¶ 10} In 2013, appellant graduated from the University of Dayton.  Around this time, appellees helped appellant purchase a vehicle.  There is no dispute that this was not a gift, and the automobile loan would be repaid.  In November 2013, appellant called Berrin to inform her that he had obtained full-time employment.  Berrin stated appellant told her that he could not pay them back because his salary was not as high as anticipated.  Berrin described this revelation as "out of the blue," and she tried "to process what he's saying.  Of course, I was upset."  (Tr. at 107.)

{¶ 11} After the November telephone call, appellees' relationship with appellant quickly deteriorated.  A series of emails between the parties ensued.  In a November 26, 2013 email, appellant stated:

> Since you have been acting like an investigator find one email
> which says you are giving the money in condition to pay it
> back and I agree to pay you.  I am sure I mentioned voluntarily
> to pay it without you or Berrin asking because that is my

intention.  Besides everything I never once thought not to pay you.  I always planned to pay [you] back.

(Nov. 26, 2013 email, Pl.'s Ex. 30 at 2.)

{¶ 12} In a subsequent November 26, 2013 email, appellant wrote:

One more time, I am going to pay you back.  Berrin yes all you asked is your money back and you should but there is time and how. * * * I haven't seen my paycheck yet how dare you tell me what is it going to be and how much I will be having to spend.

(Nov. 26, 2013 email, Pl.'s Ex. 33 at 1.)

{¶ 13} Appellant testified at trial that he intended to repay the money but as a gift. Appellant also testified that prior to the November emails, "[t]here was never any discussion" that he was required to repay the tuition and living expenses.  (Tr. at 282.)  In lieu of closing arguments, the magistrate requested written briefs and to provide supplemental information regarding appellees' claimed damages for tuition payments.

{¶ 14} On January 22, 2019, the magistrate issued a written decision finding in favor of appellees for unjust enrichment in the amount of $27,409.37 against appellant.  Relevant to the instant case, the magistrate determined the evidence established an oral contract between the parties.  While the contract claim was unenforceable under the statute of frauds, a quasi-contract claim for unjust enrichment remained.  The magistrate wrote the previous decision by the trial court "did not hold that there was never an oral agreement for the repayment of the money advanced by the Plaintiffs on behalf of the Defendant.  The Decision only applied the statute of fraud to the agreement and held that the statute of fraud required that the agreement be in writing."  (Jan. 22, 2019 Mag.'s Decision at 12.)  The magistrate found appellees conferred a benefit to appellant by providing financial support for his education.  While appellant claimed the funds constituted a gift, the magistrate cited a November 27, 2013 email in which appellant wrote "[i]t is your money you can get it back." (Mag.'s Decision at 14.)  The magistrate ultimately concluded it would be unjust for appellant to retain the benefit of the loan payments.  The magistrate awarded damages to appellees in the amount of $2,324.37 for living expenses and $25,085.00 for tuition payments to the University of Dayton.

{¶ 15} On February 1, 2019, appellant filed a combined motion to set aside the magistrate's decision and objections to the magistrate's decision pursuant to Civ.R. 53(D)(3).  Appellant argued, in pertinent part, the magistrate's decision violated the law of

the case doctrine. Appellant also generally objected to the magistrate's finding that appellees were entitled to unjust enrichment, and the magistrate's ruling was against the weight of the evidence. On February 15, 2019, appellees filed a memorandum contra to appellant's combined motion.

{¶ 16} On October 28, 2019, the trial court overruled appellant's objections and adopted the magistrate's decision. Relevant to this appeal, the trial court determined consideration of the emails between the parties did not violate the law of the case doctrine, stating "[t]he Magistrate's ruling does not reflect that liability was imposed for anything other than unjust enrichment, which was not inconsistent with any prior ruling." (Oct. 28, 2019 Decision & Entry at 4.) The court reasoned the emails were germane to determine whether the funds constituted a gift and whether it would be unjust to allow appellant to retain the benefit of the loan without repayment. The trial court also found that based on appellees' testimony and exhibits, they had met their burden of proof demonstrating their unjust enrichment claim. Finally, the trial court determined the magistrate's decision was supported by competent, credible evidence and was not against the manifest weight of the evidence.

{¶ 17} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Appellant assigns the following as trial court error:

> [1.] THE COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THE LAW OF THE CASE DID NOT BAR THE JUDGMENT THAT APPELLANT WAS UNJUSTLY ENRICHED.
>
> [2.] THE COURT ERRED AS A MATTER OF LAW IN ITS JUDGMENT THAT APPELLANT WAS UNJUSTLY ENRICHED.
>
> [3.] IF THE ISSUE OF PROOF OF BENEFIT, UNJUST ENRICHMENT, WAS NOT ADEQUATELY RAISED IN APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION AND/OR NOT RAISED TO THE MAGISTRATE AT TRIAL, APPELLANT RAISES THE CLAIM OF PLAIN ERROR.
>
> [4.] THE DECISION THAT APPELLANT WAS UNJUSTLY ENRICHED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. STANDARD OF REVIEW

{¶ 19} Civ.R. 53(D)(4)(d) provides: "If one or more objections to a magistrate's decision are timely filed, the [trial] court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Once objections to the magistrate's ruling are filed, the trial court " 'undertakes a de novo review of a magistrate's decision.' " *Gallick v. Benton*, 10th Dist. No. 18AP-171, 2018-Ohio-4340, ¶ 15, quoting *Meccon, Inc. v. Univ. of Akron*, 10th Dist. No. 12AP-899, 2013-Ohio-2563, ¶ 15.

{¶ 20} An appellate court generally reviews the trial court's decision to adopt, reject, or modify the magistrate's decision for an abuse of discretion. *Altercare of Canal Winchester Post-Acute Rehab. Ctr., Inc. v. Turner*, 10th Dist. No. 18AP-466, 2019-Ohio-1011, ¶ 15, citing *Tedla v. Al-Shamrookh*, 10th Dist. No. 15AP-1094, 2017-Ohio-1021, ¶ 11. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *Altercare of Canal Winchester Post-Acute Rehab. Ctr.* at ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "However, the standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error" (Internal quotations omitted.) *Fraley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-731, 2019-Ohio-2804, ¶ 9; *Feathers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10; *In re Adoption of N.D.D.*, 10th Dist. No. 18AP-561, 2019-Ohio-727, ¶ 27; *Bickerstaff v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-1028, 2014-Ohio-2364, ¶ 10. Accordingly, we will note the appropriate assignment of error throughout this analysis.

## IV. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 21} In his first assignment of error, appellant presents a multitude of arguments. First, appellant argues that appellees' complaint was defective and insufficient to establish the requisite facts at trial to demonstrate a claim for unjust enrichment. While appellant made a similar argument during his closing remarks to the magistrate, he failed to raise this alleged issue in his objections to the magistrate's decision with the trial court.

{¶ 22} A party may file written objections to the decision of the magistrate within fourteen days of the filing of the decision. Civ.R. 53(D)(3)(b)(i). "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). " '[I]f a party fails to object to a magistrate's finding or conclusion, that party waives the right to challenge the finding or conclusion on appeal.' " *Patrick v. Ressler*, 10th Dist. No. 04AP-149, 2005-Ohio-4971, ¶ 25, quoting *Brott Mardis & Co. v. Camp*, 147 Ohio App.3d 71, 78 (9th Dist.2001). "This court has held that, when a party fails to file objections to a magistrate's decision, we may still review the decision for plain error." *Little v. Watkins*, 10th Dist. No. 12AP-335, 2012-Ohio-5041, ¶ 7, citing *Brown v. Zurich US*, 150 Ohio App.3d 105, 2002-Ohio-6099, ¶ 27 (10th Dist.). Because appellant did not raise this issue in his objections nor assert plain error, we decline to address the merits of this argument.

{¶ 23} Appellant next argues the trial court erred in finding appellees' unjust enrichment claim was not precluded by the law of the case doctrine. Appellant contends the magistrate erred in considering emails between the parties after the trial court ruled appellees' breach of contract claim was barred by the statute of frauds.

{¶ 24} The law of the case doctrine states "legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels." *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, ¶ 1, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). The doctrine includes decisions by the trial court on its prior rulings. *Nolan* at 8. Whether the law of the case doctrine applies is a question of law. *Glasstetter v. Rehab. Servs. Comm.*, 10th Dist. No. 13AP-932, 2014-Ohio-3014, ¶ 27, citing *DeAscentisi v. Margello*, 10th Dist. No. 08AP-522, 2008-Ohio-6821, ¶ 12. Questions of law are reviewed de novo on appeal. *Altercare of Canal Winchester Post-Acute Rehab. Ctr.*, 2019-Ohio-1011, at ¶ 15, citing *PHH Mtge. Corp. v. Ramsey*, 10th Dist. No. 13AP-925, 2014-Ohio-3519, ¶ 14; *see also In re Adoption of N.D.D.* at ¶ 27.

{¶ 25} After a review of the record, we find the trial court correctly found the magistrate did not violate law of the case doctrine. In its June 18, 2018 entry, the trial court granted appellant's motion for partial summary judgment finding that appellees' breach of contract claim was barred by the statute of frauds. "The [trial] Court finds the e-mails exchanged between Plaintiff Eric Longmire and Defendant in November of 2013, more than

two years after the alleged making of the oral agreement, do not satisfy the requirements of a writing pursuant to R.C. §1335.05." (June 18, 2018 Decision & Entry at 9.) In his January 22, 2019 decision, the magistrate wrote: "The July 18, 2018 Decision of this Court did not hold that there was never an oral agreement for the repayment of the money advanced by the Plaintiffs on behalf of the Defendant. The Decision only applied to the statute of fraud to the agreement and held that the statute of fraud required that the agreement be in writing." (Mag.'s Decision at 12.)

{¶ 26} In the instant case, the magistrate's consideration of the emails was limited to whether the loan constituted a gift and whether it would be inequitable to allow appellant to retain the benefit of the funds. The emails provide valuable insight into the parties' intentions at the time of the dispute. As such, consideration of such evidence is probative to the resolution of the unjust enrichment claim consistent with the trial court's previous ruling.

{¶ 27} Appellant next argues that "[t]he Magistrate determined the oral evidence proved an enforceable contract as alleged in ¶3 and ¶4 of the Complaint. That finding violated the Law of the Case." (Appellant's Brief at 13.) This is simply incorrect. The magistrate concluded that "the evidence established an oral contract. But due to the July 18, 2018 [decision,] a contract claim was precluded. Leaving the Plaintiffs with the quasi contract claim of unjust enrichment." (Mag.'s Decision at 12.) Ohio law does not bar unjust enrichment if the contract claim is ultimately deemed unenforceable under the statute of frauds. In fact, unjust enrichment is available as an equitable remedy for that very reason:

> An oral contract that cannot be performed within a year of its making is unenforceable under the Statute of Frauds; but where one party fully performs and the other party, to his unjust enrichment, receives and refuses to pay over money which, under the unenforceable contract, he agreed to pay to the party who has fully performed, a quasi-contract arises, upon which the performing party may maintain an action against the defaulting party for money owed.

*Hosterman v. French*, 7th Dist. No. 13 CO 25, 2014-Ohio-5855, ¶ 20, citing *Hummel v. Hummel*, 133 Ohio St. 520 (1938), paragraph one of the syllabus.

{¶ 28} Here, while the trial court deemed the oral agreement was barred under the statute of frauds, appellees were able to proceed with the quasi-contract claim for money

conferred to appellant. We find the magistrate's consideration of the emails was limited to whether it would be unjust to allow appellant to retain the benefit of the loan and determine there is no evidence in the record that the magistrate deemed the oral evidence at trial to create an enforceable contract.

{¶ 29} Finally, appellant argues that appellees' unjust enrichment claim is precluded by the statute of frauds. This argument is without merit. Even when the statute of frauds precludes a breach of contract claim, "it has no applicability to [an] equitable claim for unjust enrichment." *Hosterman* at ¶ 19. As previously noted, when an oral contract is deemed unenforceable under the statute of frauds but one party has fully performed under the contract, the fully performing party may maintain a cause of action against the defaulting party. Here, the trial court correctly concluded that while an oral agreement was in place, the contract was unenforceable, and the equitable remedy of unjust enrichment provided appellees a viable cause of action. " '[I]f no remedy is available in contract or tort, then the equitable remedy in unjust enrichment may be afforded to prevent injustice.' " *Saraf v. Maronda Homes, Inc.*, 10th Dist. No. 02AP-461, 2002-Ohio-6741, ¶ 12, quoting *Banks v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 99AP-1413 (Nov. 28, 2000). As such, the statute of frauds does not preclude appellees' claim for unjust enrichment and afforded appellees a viable equitable remedy under the law.

{¶ 30} Based on the forgoing, we overrule appellant's first assignment of error.

## B.  Appellant's Second and Third Assignments of Error

{¶ 31} In his second assignment of error, appellant argues that as a matter of law, the trial court erred in finding in favor of appellees for unjust enrichment. In his third assignment of error, appellant argues there was no evidence as a matter of law that appellees conferred a benefit to appellant. For clarity of analysis, we will address appellant's second and third assignments of error together.

{¶ 32} To succeed in a claim for unjust enrichment, the trial court must find: "(1) a benefit conferred by the plaintiff on the defendant, (2) knowledge of the benefit by the defendant, and (3) retention of the benefit by the defendant in circumstances where it would be unjust to do so." *Lundeen v. Smith-Hoke*, 10th Dist. No. 15AP-236, 2015-Ohio-5086, ¶ 51, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). To demonstrate a claim of unjust enrichment, " ' "[i]t is not sufficient for the plaintiffs to show

that [they have] conferred a benefit upon the defendants.  [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendant to retain the benefit." ' "  *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 10th Dist. No. 19AP-775, 2020-Ohio-2694, ¶ 10, quoting *United States Health Practices v. Blake*, 10th Dist. No. 00AP-1002 (Mar. 22, 2001), quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552 (10th Dist.1992).  A cause of action for unjust enrichment arises from a contract implied in law or quasi-contract.  *Hummel* at 525. " ' "Under this type of contract, civil liability 'arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain' without compensating the individual who conferred the benefits." ' "  *Camp St. Marys Assn. of the W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 3d Dist. No. 2-06-40, 2008-Ohio-1490, ¶ 23, quoting *Fisk Alloy Wire, Inc. v. Hemsath,* 6th Dist. No. L-05-1097, 2005-Ohio-7007, ¶ 69, quoting *Firstar Bank, N.A. v. Prestige Motors, Inc.*, 6th Dist. No. H-04-037, 2005-Ohio-4432, ¶ 8, quoting *Hummel* at 525.

{¶ 33} Appellant argues the trial court erred as a matter of law by finding appellees conferred a benefit to appellant in the form of tuition and living expenses.  Appellant contends "[t]he offered evidence supporting the judgment deviated and was not supported by Ohio law; what Appellees paid, the costs of Appellant's graduate tuition, is not evidence of received benefit."  (Appellant's Brief at 54.)  Appellant does concede that the issue might not have been adequately raised to the trial court but argues it is plain error to find a benefit was conferred in this case.

{¶ 34} After an independent review of the record, we find appellant failed to preserve his proof of benefit argument with the trial court and is raising the issue for the first time on appeal.  At trial during a discussion with the magistrate, appellant conceded the first two elements of unjust enrichment were established.  Because appellant failed to preserve this issue for appeal as required by Civ.R. 53(D)(3), our review is limited to plain error.  Civ.R. 53(D)(3)(b)(iv).  "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself."  *Recovery Funding, LLC v. Leader Technologies*

*Inc.*, 10th Dist. No. 18AP-177, 2018-Ohio-5364, ¶ 8, citing *Brown*, 2002-Ohio-6099, at ¶ 27, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 35} We conclude the trial court did not commit plain error in determining that appellees conferred a benefit to appellant in the form of a loan for tuition and living expenses while he was enrolled at the University of Dayton. We agree with the trial court that the tuition and living expenses provided needed financial support to appellant allowing him to finance his graduate education. As such, we find appellant's argument unpersuasive.

{¶ 36} As to the second element of unjust enrichment, the parties do not dispute that appellant was aware of the financial assistance provided by appellees. Accordingly, the rest of our analysis will focus on the final element of unjust enrichment as to whether it would be inequitable to permit appellant to retain the benefit of the tuition and living expenses.

{¶ 37} Appellant argues the trial court erred as a matter of law in finding that it would be unjust to permit appellant to retain the benefit of the tuition and living expenses without repayment. Questions of law are reviewed de novo. *Altercare of Canal Winchester Post-Acute Rehab. Ctr.*, 2019-Ohio-1011, at ¶ 15. In determining whether it would be unjust for appellant to retain the benefit, the court must look at what party has the "superior equity so that * * * it would be unconscionable for [him] to retain the benefit." *Katz*, 84 Ohio App.3d at 552. There also must be a causal connection between the benefit retained by appellant and the detriment of appellees. *Giles v. Hanning*, 11th Dist. No. 2001-P-0073, 2002-Ohio-2817, ¶ 13.

{¶ 38} After a review of the record, we find the trial court was correct in determining appellees have a superior equity interest that it would be unjust for appellant to retain the benefit of the loan. Appellees provided $27,409.37 in tuition and living expenses with the understanding they would be repaid. Appellant confirmed over multiple emails that he planned on paying appellees back for the financial assistance. In a November 26, 2013 email, appellant stated "[b]esides everything I never once thought not to pay you. I always planned to pay [you] back." (Nov. 26, 2013 email, Pl.'s Ex. 30 at 2.) In another November 26 email, appellant wrote "[o]ne more time, I am going to pay you back. Berrin yes all you asked is your money back and you should but there is time and how." (Nov. 26, 2013 email, Pl.'s Ex. 33 at 1.) Finally, in a November 27, 2013 email, appellant wrote "[t]hat is your money," and he "always told [appellees] that [he] would pay [them] back." (Tr. at

137.)  Based on the emails and testimony at trial, we determine appellees have met their burden that it would be unjust for appellant to retain the benefit of the financial assistance without repayment.

{¶ 39}  Appellant argues that the trial court erred in "excusing Appellees from their obligation to pay all living expenses" and to "fully perform the contract upon which they sued; performing about only 42% of it."  (Appellant's Brief at 48.)  Appellant's argument is without merit.  The parties agreed appellees would provide financial assistance as needed to appellant for tuition and living expenses.  When appellant was asked whether appellees paid his tuition and living expenses "to the extent that [he] needed it," appellant responded "[y]es."  (Tr. at 293.)  Moreover, the evidence at trial demonstrated appellees aided appellant whenever possible.  Appellees, for all intents and purposes, were appellant's financial safety net.  When asked if appellees provided financial assistance with his living expenses after he received his inheritance, appellant stated they would "send me some money when my budgeted amount went over."  (Tr. at 251.)  The fact that appellees did not pay for all of appellant's tuition or living expenses does not mean they did not fully perform under the agreement.  Accordingly, we find appellant's argument unpersuasive.

{¶ 40}  Appellant next argues that the payment of tuition and living expenses constituted a gift.  Appellant contends that any statements that he would repay appellees was out of gratitude, not from a legal obligation.  Appellant also argues that "[w]ithout an express contract, family members are not required to reimburse family."  (Reply Brief at 12.)  For the reasons that follow, we find both arguments without merit.

{¶ 41}  "The elements required to demonstrate an inter vivos gift are: '(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there, and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion, and control over it.' "  *Howard v. Himmelrick*, 10th Dist. No. 03AP-1034, 2004-Ohio-3309, ¶ 5, quoting *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936), paragraph one of the syllabus. There is a general presumption that exchanges of funds between family members is a gift. *Martin v. Steiner*, 9th Dist. No.17AP0021, 2018-Ohio-3928, ¶ 11, citing *Kostyo v. Kaminski*, 9th Dist. No. 12CA010266, 2013-Ohio-3188, ¶ 20.  "The family gift presumption

may be rebutted by 'circumstances or evidence going to show a different intention, and each case has to be determined by the reasonable presumptions arising from all the acts and circumstances connected with it.' " *Filkins v Schwartz*, 3d Dist. No. 1-07-73, 2008-Ohio-1340, ¶ 15, quoting *Wertz ex rel. Estate of Jurkoshek v. Tomasik*, 9th Dist. No. 20209 (Feb. 7, 2001).

{¶ 42} At trial, appellees testified that appellant repeatedly stated the funds would be repaid. Berrin testified she told appellant that she would "help [appellant] as much as [she could]" but do not forget "[a]s soon as you start to work, you will pay me back." (Tr. at 72-73.) Berrin also told appellant, "of course, we trust you that you will pay us back. * * * And I said, as you can see how expensive it is." (Tr. at 99-100.) Berrin's testimony is supported by several emails between the parties noting appellant would repay the tuition and living expenses. While appellant argues this was out of a moral obligation, not a legal one, the repeated assurances that he would repay appellees and classifying the loan as "your money" contradicts appellant's contention that the money was a gift. (Tr. at 136.) Accordingly, the trial court correctly determined that appellees rebutted the presumption that the tuition and living expenses constituted a gift.

{¶ 43} As such, we overrule appellant's second and third assignments of error.

## C. Appellant's Fourth Assignment of Error

{¶ 44} In appellant's fourth assignment of error, appellant argues the trial court's decision was against the manifest weight of the evidence. For the reasons that follow, we disagree.

{¶ 45} When reviewing a judgment under a manifest-weight standard, we must " 'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses, and determine[] whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way.' " *Mid Am. Constr., LLC v. Univ. of Akron*, 10th Dist. 18AP-846, 2019-Ohio-3863, ¶ 21, quoting *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 19. The weight of the evidence "is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." (Emphasis omitted; internal quotations omitted.) *Mid Am. Constr.* at ¶ 21.

{¶ 46} When reviewing a civil action under a manifest-weight standard, we must be cognizant of the presumption favoring determinations by the finder of fact. " 'A trial court's

findings of fact are presumed correct, and "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide." ' " *Miller v. Ohio Dept. of Transp.*, 10th Dist. No. 13AP-849, 2014-Ohio-3738, ¶ 44, quoting *Rex v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 13AP-397, 2013-Ohio-5110, ¶ 18, quoting *Eagle Land Title Agency, Inc. v. Affiliated Mtge. Co.*, 10th Dist. No. 95APG12-1617 (June 27, 1996). " 'Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Williams v. Ohio Dept. of Rehab. & Corr.*, 18AP-720, 2019-Ohio-2194, ¶ 17, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 47} Appellant focuses his manifest weight argument on the magistrate's finding that "[t]he Plaintiffs did not in fact have to pay for most of the Defendant's living expenses because the Defendant had inherited money at or near the same time he came to America." (Mag.'s Decision at 8.) Appellant restates his previous argument that because appellees did not pay for all of appellant's living and tuition expenses, they did not fully perform under the agreement.

{¶ 48} On review, there was competent, credible evidence for the trial court to conclude appellees provided all tuition and living expenses requested by appellant. By providing a financial safety net and additional funds when appellant exceeded his monthly budget, appellees offered much needed support to appellant while he pursued his graduate education. Accordingly, we find the weight of the evidence supports the ruling of the trial court.

{¶ 49} For the forgoing reasons, appellant's fourth assignment of error is overruled.

**V. CONCLUSION**

{¶ 50} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____