[Cite as *New California Woods Homeowners Assn. v. Jakse*, 2021-Ohio-3783.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

NEW CALIFORNIA WOODS
HOMEOWNERS ASSOCIATION,                    CASE NO. 14-21-04

    PLAINTIFF-APPELLEE,

    v.

JENNIFER A. JAKSE, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-                                       O P I N I O N

DOUGLAS J. VANBUREN, ET AL.,

    DEFENDANTS-APPELLANTS.


**Appeal from Union County Common Pleas Court**
**Trial Court No. 2019-CV-0220**

**Judgment Affirmed**

**Date of Decision:  October 25, 2021**


APPEARANCES:

    *Douglas J. VanBuren,* **Appellant**

    *Melissa M. VanBuren*, **Appellant**

    *Anthony C. Will* **for Appellee, New California Woods**
                                **Homeowners Association**

Case No. 14-21-04

**WILLAMOWSKI, P.J.**

{¶1} Defendants-appellants Douglas J. VanBuren and Melissa M. VanBuren (collectively "the VanBurens") appeal the judgment of the Union County Court of Common Pleas, alleging that the trial court erred (1) by granting plaintiff-appellee New California Woods Homeowners Association's ("NCWHA") motion for summary judgment and (2) by granting the permanent injunction requested by the NCWHA. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} In 1993, a Declaration ("Original Declaration") establishing the New California Woods Subdivision was recorded in the Union County Recorder's Office. Doc. 52, Ex. G. This Original Declaration contained the following use restriction:

> **No structure of a temporary character, trailer, mobile home, tent, shack, garage, barn or other outbuilding shall be used on the Property at any time as a residence, shall be used for storage purposes or for any other purpose.**

Doc. 52, Ex. G. This Original Declaration stated that "[e]ach grantee of Declarant, its successors or assigns, by the acceptance of a deed of conveyance accepts the same subject to all restrictions, conditions, covenants * * * created * * * by this Declaration * * *." Doc. 52, Ex. G. Further, the Original Declaration stated that,

> **[u]pon filing of an amendment to this Declaration, thereby subjecting additional property to this plan for ownership of New California Woods, such additional property shall thereafter be subject to all the terms and provisions of this Declaration, to the**

-2-

**same extent and with the same effect as if such additional property had been described herein * * *.**

Doc. 52, Ex. G.

{¶3} Subsequently, several amendments to the Original Declaration were recorded as the New California Woods Subdivision was developed. Doc. 52, Ex. J, H. In 1998, a fourth amendment ("Phase IX Amendment") to the Original Declaration was recorded. Doc. 52, Ex. H. The property subject to this Phase IX Amendment was subdivided into lots 105 to 116 of Phase IX of the New California Woods Subdivision. Doc. 52, Ex. H. The Phase IX Amendment stated that "[t]he purpose of this amendment is to submit the real property referred to herein" to the Original Declaration. Doc. 52, Ex. H.

{¶4} In 2006, an Amended and Restated Declaration ("2006 Restated Declaration") was recorded because the "[d]eclarant desire[d] to amend and restate the Original Declaration as described in this document to address certain issues which have arisen since the recording of the Original Declaration[.]" Doc. 52, Ex. D. This Restated Declaration contained the following use restriction: "No structure of a temporary character, trailer, mobile home, shack, garage, barn or other outbuilding shall be permitted on the Property at any time." Doc. 52, Ex. D.

{¶5} In June of 2017, the VanBurens obtained title to Lot 108 in Phase IX of the New California Woods Subdivision. Doc. 2, Ex. 4. Doc. 52, Ex. E. When the VanBurens purchased this property, no shed was located on the premises. Melissa

VanBuren Deposition, 6. Douglas VanBuren Deposition, 18. The VanBurens indicated that this shed was installed in or around June of 2017. Doc. 37.

{¶6} On July 1, 2019, the NCWHA's counsel sent a letter to the VanBurens that stated a "shed/outbuilding" on their property violated the deed restrictions in the Declaration for the New California Woods Subdivision. Doc. 17. *See* Doc. 52. The letter requested removal of the outbuilding on their property by August 1, 2019. Doc. 17. On August 11, 2019, the NCWHA notified the VanBurens that legal action would ensue if the outbuilding was not removed. Doc. 17. The NCWHA requested that the shed be removed by October 1, 2019. Doc. 51. However, the shed was not removed. Doc. 2, 17.

{¶7} On December 2, 2019, the NCWHA filed a complaint against the VanBurens.[1] Doc. 2. This complaint alleged that the VanBurens had an outbuilding on their property in violation of the use restrictions governing the property. Doc. 2. The NCWHA requested a permanent injunction enjoining the Van Burens from constructing additional outbuildings on their properties and an order that required them to remove the temporary structure already existing on their lots. Doc. 2.

{¶8} On August 3, 2020, the NCWHA filed a motion for summary judgment. Doc. 51, 52. On November 4, 2020, the trial court found that the VanBurens' property was subject to the restriction that prohibited outbuildings. Doc. 70. The

---

[1] This complaint named a number of other parties as defendants. Doc. 2. The complaint alleged that these other parties had outbuildings that violated the applicable use restriction against outbuildings. Doc. 2. However, this appeal only concerns the VanBurens. Doc. 2.

trial court then granted the NCWHA's motion for partial summary judgment and issued the permanent injunction requested by the same. Doc. 70. The trial court then set a hearing for damages. Doc. 70. On January 13, 2021, the trial court issued a judgment entry that awarded the NCWHA $13,990.13 for costs and fees.[2] Doc. 86.

{¶9} The VanBurens filed their notice of appeal on February 12, 2021. Doc. 91. On appeal, the VanBurens raise the following two assignments of error:

### First Assignment of Error

**The Trial Court errored [sic] in granting the Motion for Summary Judgment and the award of Permanent Injunction to Plaintiff in accordance with Civ.R. 56(C).**

### Second Assignment of Error

**The Trial Court errored [sic] in granting the award of Permanent Injunction to Plaintiff as a matter of law.**

*First Assignment of Error*

{¶10} The VanBurens allege that the use restriction prohibiting outbuildings does not apply to their property and that, for this reason, the trial court erred in granting summary judgment to the NCWHA.

---

[2] While noting that the NCWHA is simply a registered fictitious name, we nonetheless make no determination regarding the validity of the judgment in its favor.

Legal Standard

**{¶11}** Appellate courts consider a summary judgment order under a de novo standard of review. *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under the Ohio Rules of Civil Procedure,

> **[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law \* \* \*. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.**

Civ.R. 56(C). "The party moving for summary judgment has the initial burden 'to inform the trial court of the basis for the motion, identifying the portions of the record, including the pleadings and discovery, which demonstrate the absence of a genuine issue of material fact.'" *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8, quoting *Reinbolt v. Gloor*, 146 Ohio App.3d 661, 664, 767 N.E.2d 1197 (3d Dist. 2001).

**{¶12}** "The burden then shifts to the party opposing the summary judgment." *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5058, 126 N.E.3d 341, ¶ 11 (3d Dist.), quoting *Middleton* at ¶ 8. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-

3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E). "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

{¶13} "A 'restrictive covenant' is a 'private agreement, usu[ally] in a deed or lease, that restricts the use or occupancy of real property, esp[ecially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'" *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28, quoting Black's Law Dictionary (7th Ed.Rev. 1999) 371. "Restrictive covenants are often utilized to effect a general plan for a development." *Dillingham v. Do*, 12th Dist. Butler Nos. CA2002-01-004, CA2002-01-017, 2002-Ohio-3349, ¶ 16. "An owner of land is free to adopt a general building plan for a development, designed to make it more attractive for residential purposes." *Id*. at ¶ 10. "Restrictive covenants run with the land and bind subsequent purchasers * * *." *Wells Fargo Bank, N.A. v. Michael*, 2013-Ohio-2545, 993 N.E.2d 786, ¶ 29 (7th Dist.).

{¶14} "Contract construction rules apply to the interpretation of the deed restrictions." *Siltstone Resources, LLC v. Ohio Public Works Commission*, 2019-

Ohio-4916, 137 N.E.3d 144, ¶ 29 (7th Dist.). "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Nationwide Mut. Fire Ins. Co. v. Pusser*, 160 Ohio St.3d 203, 2020-Ohio-2778, 155 N.E.3d 839, ¶ 8. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction." *Clark v. Osting*, 3d Dist. Allen No. 1-03-17, 2004-Ohio-98, ¶ 11, quoting *Dean v. Nugent Canal Yacht Club, Inc*., 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 557 (6th Dist. 1990).

Legal Analysis

{¶15} The VanBurens raise four main issues in their appeal. We will consider each of these issues in turn. First, the VanBurens argue that the use restriction prohibiting outbuildings ceased to apply to their property when the Restated Declaration was recorded to restate and amend the Original Declaration. The Restated Declaration states the following:

> **WHEREAS, Declarant desires to amend and restate the Original Declaration as described in this document to address certain issues which have arisen since the recording of the Original Declaration; and**
>
> **WHEREAS, Declarant desires to subject the property described in Exhibit B to those certain conditions, restrictions, easements, covenants, and assessments described below.**

Doc. 52, Ex. D. The Restated Declaration then annexes Phases Six and Seven of the New California Woods Subdivision. Doc. 52, Ex. D.

{¶16} The VanBurens then point to an amendment ("2019 Amendment") to the Restated Declaration that was filed in 2019. Doc. 52, Ex. J. This 2019 Amendment states the following:

> **WHEREAS, on or around January 20, 2006 Declarant executed an Amended and Restated Declaration creating and establishing a plan of ownership of New California Woods thereby replacing the Original Declaration and all amendments made thereto * * *.**

Doc. 52, Ex. J. Based on this language, the VanBurens assert that the restrictions in the Restated Declaration only apply to Phases Six and Seven of the New California Woods Subdivision because the Restated Declaration "replac[ed]" the Original Declaration and the associated Phase IX Amendment. Doc. 52, Ex. J.

{¶17} However, in its own terms, the Restated Declaration was recorded to "amend and restate the Original Declaration" in addition to annexing Phases Six and Seven to the New California Woods Subdivision. Doc. 52, Ex. D. Thus, the Restated Declaration did not release the areas already subject to the Original Declaration from any and all use restrictions but restated and amended these existing use restrictions. Practically, this simply means that property owners in this subdivision are to look at the Restated Declaration rather than the Original Declaration to determine their rights and obligations.

{¶18} Further, "the purpose" of these restrictions was to "enhance[e] and protect[] the value, desirability and attractiveness of the Property." Doc. 52, Ex. D. The Restated Declaration was clearly intended to also impose restrictions on Phases Six and Seven of the subdivision. In the content of the relevant recorded

instruments, we see no reason why the builder would have used the Restated Declaration to impose use restrictions on Phases Six and Seven of this subdivision while, at the same time, lifting these use restrictions from the rest of the subdivision.

{¶19} Turning to the 2019 Amendment, the language of this recorded instrument states that Restated Declaration "replac[ed]" the Original Declaration. Doc. 52, Ex. J. However, in the recitals, the 2019 Amendment states its relevant background, mentioning the Original Declaration, the six amendments made thereto, and the Restated Declaration. Doc. 52, Ex. J. These recitals place the Restated Declaration and the 2019 Amendment within the larger scheme of the New California Woods Subdivision. The recitals in the 2019 Amendment contemplate this subdivision as a whole and evince an intent to subject a new phase of this development to the use restrictions that already prevailed in the existing subdivision. There is no indication in these recorded instruments that the declarant intended for portions of the New California Woods Subdivision to be subject to use restrictions while other portions of this subdivision are exempt.

{¶20} Ultimately, the language identified by the VanBurens in the 2019 Amendment refers home owners in the New California Woods Subdivision to the Restated Declaration rather than the Original Declaration as the controlling instrument in determining their rights and obligations. Doc. 52, Ex. J. As we noted above, the Restated Declaration amended and restated the Original Declaration, thereby becoming the primary controlling instrument for the New California Woods

Subdivision. Doc. 52, Ex. D, G. There is no indication that the Restated Declaration or the 2019 Amendment was recorded with the intention of releasing the properties in Phase IX of the development from the use restrictions that govern the New California Woods Subdivision.

{¶21} The recorded instruments that the NCWHA filed with the trial court indicate that the VanBurens' property is subject to the use restriction that prohibits outbuildings. In response, the VanBurens have not demonstrated that a genuine issue of material fact exists as to whether their property is subject to the use restrictions as set forth in the Restated Declaration. For this reason, the arguments raised in this first issue are without merit.

{¶22} Second, the VanBurens argue that the Original Declaration, the Restated Declaration, and the Phase IX Amendment fail to comply with Ohio's Planned Community Law in two regards. Initially, the VanBurens assert that the bylaws were not filed with the Phase IX Amendment. R.C. 5312.02 reads, in its relevant part, as follows:

> **(A) Any planned community in this state is subject to this chapter. No person shall establish a planned community unless that person files and records a declaration and bylaws for that planned community in the office of the recorder of the county or counties in which the planned community is located.**
>
> **(B) Any declaration for a planned community shall be accompanied by bylaws that provide for the operation of the planned community. * * ***

R.C. 5312.02(A), (B). R.C. 5312.01(G) contains the following definition:

> **'Declaration' means an instrument a property owner executes and records to declare that the property is a planned community subject to the provisions of this chapter.**

R.C. 5312.01(G). In this case, the NCWHA filed certified copies of the Original Declaration and the Restated Declaration that had been recorded in Union County. Doc. 52, Ex. D, G. Both of these instruments were recorded with copies of the bylaws. Doc. 52, Ex. D, G.[3]

{¶23} The Phase IX Amendment was an addition to the Original Declaration. *See* Black's Law Dictionary (11th Ed. 2019) (defining an amendment as "a formal and usu[ally] minor revision or addition proposed or made to a[n] * * * instrument"). This amendment merely brought additional property into an existing planned community that had already been created by the Original Declaration. The Phase IX Amendment contains the following language:

> **[T]he [Original] Declaration and all attachments thereto, including but being not limited to the By-Laws of the New California Woods Association, are hereby incorporated by reference as though fully rewritten herein.**

Doc. 52, Ex. H. This amendment expressly subjected the property in Phase IX of the subdivision to the Original Declaration and bylaws that had already been filed in the recorder's office. Since the Original Declaration was recorded with the bylaws, this argument does not establish noncompliance with R.C. 5312.02.

---

[3] We note that R.C. 5312.02(A), (B) became effective on September 10, 2010. R.C. 5312.02. Both the Original Declaration and the Restated Declaration were filed before this provision became effective. Doc. 52, Ex. D, G. Nonetheless, both instruments are in compliance with R.C. 5312.02(A), (B).

-12-

{¶24} Next, the VanBurens assert that no copy of the bylaws was recorded 180 days after the effective date of R.C. 5312.02 in violation of R.C. 5312.02(D)(1). R.C. 5312.02(D)(1) reads as follows:

> **(D)(1) The board of directors of the owners association of any planned community that is in existence on the original effective date of this chapter shall file and record the bylaws of that planned community that are in effect on that effective date in the office of the recorder of the county or counties in which the planned community is located within one hundred eighty days after that effective date.**

R.C. 5312.02(D)(1). The effective date of this provision was September 10, 2010. R.C. 5312.02. Thus, R.C. 5312.02(D)(1) required existing homeowners associations to have their bylaws recorded no later than 180 days after September 10, 2010. R.C. 5312.02(D)(1).

{¶25} In this case, since the bylaws had already been filed and recorded with the Original Declaration and Restated Declaration, there was no need to refile and re-record the bylaws within 180 days of September 10, 2010. Thus, the arguments in this second issue do not establish noncompliance with R.C. 5312.02. *See also* R.C. 5312.02(C) (stating that nothing in the Ohio Planned Community Law "invalidates any provision of a document that governs a planned community" if that provision was in the document and recorded prior to September 10, 2010).

{¶26} Third, the VanBurens challenge an affidavit from the NCWHA's expert witness, Tina Owens-Ruff ("Owens-Ruff"). In her affidavit, Owens-Ruff listed a number of recorded documents that she had reviewed and concluded that

the use restrictions that prohibited outbuildings applied to the VanBurens' property. Doc. 52, Ex. C. The VanBurens argue that this affidavit should be of no consequence because there is no indication that Owens-Ruff examined the 2019 Amendment. The VanBurens assert that the 2019 Amendment is of significance because it states that the Restated Declaration "replac[ed]" the Original Declaration. Doc. 52, Ex. J.

{¶27} However, the NCWHA filed certified copies of the Original Declaration, the Phase IX Amendment, the Restated Declaration, and the 2019 Amendment with the trial court. Doc. 52. For this reason, we were able to examine these documents independently. After we reviewed the 2019 Amendment as part of the first issue in this assignment of error, we concluded that it did not render the use restriction against outbuildings inapplicable to the VanBurens' property. Thus, while Owens-Ruff may not have had the 2019 Amendment before her when she concluded that the use restrictions applied to the VanBurens' property, we did have the 2019 Amendment before us and reached the same conclusion. As such, the arguments presented under this third issue do not establish that the use restriction that prohibits outbuildings is inapplicable to the VanBurens' property.

{¶28} Fourth, the VanBurens allege that the plat maps for Phase IX of the New California Woods Subdivision did not list the page numbers where additional deed restrictions could be found. *See DeRosa v. Parker*, 197 Ohio App.3d 332, 2011-Ohio-6024, 967 N.E.2d 767, ¶ 36 (7th Dist.). This argument appears to be

-14-

about whether the recorded instruments provided adequate notice of the relevant use restrictions to property owners. To be bound by use restrictions on property, a purchaser of land must have actual or constructive notice of those restrictions. *Emrick v. Multicon Builders*, Inc., 57 Ohio St.3d 107, 109, 566 N.E.2d 1189 (1991) ("[A] bona fide purchaser for value is bound by an encumbrance upon land * * * if he has constructive or actual knowledge of the encumbrance.").

{¶29} "Constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Williams Creek Homeowners Assn. v. Zweifel*, 10th Dist. Franklin No. 07AP-689, 2008-Ohio-2434, ¶ 40. If the restrictions are recorded in an instrument that is in a purchaser's chain of title, the purchaser is generally deemed to have constructive knowledge of those restrictions. *Saddlebrook Homeowners Assn., Inc. v. Dunfee*, 10th Dist. Franklin No. 90AP-1260, 1991 WL 82018, *2 (May 14, 1991). *See Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 467 N.E.2d 537 (1984); *Kimberly Recreation Assn. v. Butts*, 10th Franklin No. 96APG09-1202, 1997 WL 170293, *3 (Apr. 10, 1997).

{¶30} In this case, if the plat maps had contained the relevant page numbers, this "would certainly give additional express notice to a buyer of the deed restrictions on the property * * *." *DeRosa* at ¶ 36. *See also Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 315, 594 N.E.2d 1 (2d Dist. 1990). However, the fact that these blanks on the plat maps were not filled in does not mean that the VanBurens did not have constructive notice of these use restrictions. The relevant

use restrictions were contained in recorded instruments in the VanBurens' chain of title. Thus, notwithstanding these blanks on the plat map, a search of their chain of title would uncover the fact that their property is subject to recorded instruments that contain a use restriction that prohibits outbuildings on their property.

{¶31} We also note that, in addition to the relevant use restriction having been stated in recorded instruments in the VanBurens' chain of title, the VanBurens' deed also stated that their property was "[s]ubject to conditions, restrictions and easements, if any, contained in prior instruments of record." Doc. 52, Ex. E. *See Smith v. Volk*, 85 Ohio App. 347, 350, 53 Ohio Law Abs. 432, 86 N.E.2d 30, (2d Dist. 1948) (holding that constructive notice of restrictions existed where a deed stated that it was "subject to all restrictions of record"). For these reasons, we conclude that the arguments raised under the fourth issue in this assignment of error are without merit.

{¶32} In conclusion, the NCWHA filed certified copies of the Original Declaration, the Phase IX Amendment, the Restated Declaration, and the 2019 Amendment with the trial court. These recorded instruments indicate that the VanBurens' property is clearly subject to a use restriction that prohibits outbuildings. In response, the VanBurens have not demonstrated that a genuine issue of material fact exists for trial. As such, we conclude that the trial court did not err in granting the NCWHA's motion for summary judgment. The VanBurens' first assignment of error is, therefore, overruled.

*Second Assignment of Error*

{¶33} The VanBurens next allege that the NCWHA did not establish that the use restriction prohibiting outbuildings applied to their property and that the trial court, therefore, erred in granting the NCWHA a permanent injunction. However, in our analysis of the first assignment of error, we concluded that the NCWHA did, in fact, establish that the use restriction prohibiting outbuilding does apply to the VanBurens' property. As such, the argument raised by the VanBurens in their second assignment of error has been decided by our disposition of their first assignment of error. For this reason, their second assignment of error is overruled.

*Conclusion*

{¶34} Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**