[Cite as *Davidson v. Hatcher*, 2022-Ohio-4452.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

GARY DAVIDSON,

    PLAINTIFF-APPELLANT,

    v.

ROBERT HATCHER,

    DEFENDANT-APPELLEE.

CASE NO. 1-22-21

O P I N I O N


GARY DAVIDSON,

    PLAINTIFF-APPELLANT,

    v.

ROBERT HATCHER,

    DEFENDANT-APPELLEE.

CASE NO. 1-22-22

O P I N I O N


**Appeals from Lima Municipal Court**
**Trial Court Nos. 21CVG01622 and 21CVG01623**

**Judgments Affirmed**

**Date of Decision: December 12, 2022**


**APPEARANCES:**

    *Aaron L. Bensinger* **for Appellant**

    *Dalton J. Smith* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Gary Davidson ("Davidson") appeals the judgments of the Lima Municipal Court, alleging that the trial court erred in concluding that a witness could be qualified as an expert; in concluding that damages could not be established; and in dismissing Davidson's cases. For the reasons set forth below, the judgments of the trial court are affirmed.

*Facts and Procedural History*

{¶2} On August 3, 2021, Davidson filed a complaint for forcible entry and detainer against Robert E. Hatcher ("Hatcher") for a commercial property on North Cole Street in Lima, Ohio. Doc. 1A. Oct. 7 Tr. 8. Hatcher and Davidson had originally entered into a written lease agreement for this property in 2007. Oct. 7 Tr. 12, 35. Ex. 1. The complaint alleged that Hatcher had failed to pay rent and remained on the property after the expiration of his term. Doc. 1A. This complaint became the basis of Case No. 21CVG01622. Doc. 1A.

{¶3} On August 3, 2021, Davidson also filed a second complaint for forcible entry and detainer against Hatcher for a residential rental property on Greendale Street in Lima, Ohio. Doc. 1B. Oct. 7 Tr. 41. Hatcher and Davidson had originally entered into a lease agreement for this property in 2008. Oct. 7 Tr. 21, 43-44. Ex. 2, G.[1] The complaint alleged that Hatcher had failed to pay rent and was now on

---

[1] According to its terms, the written lease agreement for the property on North Cole Street expired in 2008. Ex. 1. *See* Oct. 7 Tr. 13. Similarly, according to its terms, the written lease agreement for the Greendale Street property expired in 2009. Ex. 2. Plaintiff's counsel represented that the parties operated on a month-

this property after the expiration of his term. Doc. 1B. This complaint became the basis of Case No. 21CVG01623. Doc. 1B. These cases were then consolidated for trial. Doc. 12A, 12B.

{¶4} A bench trial was held before a magistrate on October 7 and 19, 2021. Doc. 12A, 12B. At trial, copies of the written lease agreements from 2007 and 2008 were introduced. Ex. 1, 2. Oct. 19 Tr. 166. Both lease agreements included language that gave Hatcher an option to purchase the subject property. Ex. 1, 2. Oct. 7 Tr. 12, 21, 38, 43, 47. Davidson testified that Hatcher did not exercise either of these options in accordance with the terms of the written lease agreement. *Id*. at 15, 22-23. However, defense counsel disputed Davidson's position on whether Hatcher had exercised an option in these cases. *Id*. at 23.

{¶5} At trial, Plaintiff's counsel admitted that Davidson's records of Hatcher's payments from before 2015 were "sporadic." Oct. 7 Tr. 16. Referring to his recordkeeping, Davidson said, "I obviously don't keep track real well" of the payments he receives. *Id*. at 77. He further stated, "I should do a better job. I lose thousands of dollars a year." *Id*. at 75. Davidson testified that Hatcher initially made payments in cash. Oct. 7 Tr. 15. However, Davidson's records became more regular when he began using a credit card payment system called "Square" in 2016. *Id*. at 17, 25, 30. Davidson's testimony indicates that he accepted payments from

---

to-month arrangement after the expiration of the term in the lease. Oct. 7 Tr. 3, 10. The magistrate found that these actions were ultimately brought, "claiming two oral contracts" rooted in "initial understandings * ** pursuant to two (2) written 'Residential Lease With Option to Buy'" agreements. Doc. 12A, 12B.

Hatcher for both properties together through Square. *Id*. at 42. He further stated that he did not apply the payments he received from Hatcher on Square to his obligations on the two properties in any established order of priority. *Id*. at 41-42, 58, 60. *See also Id*. at 64.

{¶6} The records from Square documented the credit card payments that Hatcher made to Davidson. Oct. 7 Tr. 26, 30. Ex. K. While Davidson alleged Hatcher had been behind on his obligations for much of the period between 2017 and 2021, he began to take steps towards evicting Hatcher in July of 2021. Oct. 7 Tr. 31, 103-105.[2] Ex. K. Davidson also introduced a document as Exhibit K that recorded the payments that he had received from Hatcher. Ex. K. The figures in Exhibit K were largely based on the records that Davidson received from Square. Oct. 7 Tr. 26-27. Oct. 19 Tr. 11-12. Exhibit K purported that Hatcher had "a delinquency of $20,364.52." Doc. 12A, 12B. Oct. 7 Tr. 25, 28, 30. Ex. K. While Exhibit K included payments received on Square and referenced a number of cash payments, this document did not mention any value received from Hatcher in the form of tangible property. Ex. K.

{¶7} On cross-examination, Davidson admitted that he accepted a van from Hatcher when he had fallen behind on his obligations. Oct. 7 Tr. 92. Defense

---

[2] Davidson's testimony indicates that he began the process of evicting Hatcher in 2015 but did not, in the end, seek to evict Hatcher at that time. Oct. 7 Tr. 94. Based on the trial testimony, the magistrate found that "Plaintiff, even though he claims considerable rent delinquency for the years 2016-2021, never seriously confronted Defendant or demanded or claimed delinquency until July 2021." Doc. 12A, 12B.

counsel introduced a title for a van that was transferred in March of 2016. *Id.* Ex. I. The title listed the value of the van as $2,500.00. Ex. I. Davidson stated that he gave Hatcher a $2,500.00 credit towards his obligations in exchange for the van. Oct. 7 Tr. 92-93. Davidson also admitted to accepting a watch that Hatcher claimed to have a value of $10,000.00. *Id.* at 95-96. However, Davidson stated that he believed that the watch was only worth $74.98. *Id.* at 95. He stated that he did not give Hatcher a $10,000.00 credit for the watch. *Id.* at 97.

{¶8} Defense counsel also questioned Davidson about a collection of roughly "a hundred thousand stones * * *." Oct. 7 Tr. 98. He indicated that this collection, including an uncut emerald, belonged to him and was not given to him by Hatcher as collateral for his obligations. *Id.* at 98-99. Davidson also testified that he had a meeting at a local restaurant with Hatcher and Hatcher's bookkeeper, Rhonda Blackledge ("Blackledge"), in 2017 to discuss the fact that Hatcher was behind on his obligations. *Id.* at 100, 102.

{¶9} After Davidson testified, the Defense called Blackledge and Hatcher as witnesses. Oct. 19 Tr. 26, 127. The Defense also called Larry Cole, a lapidarist, to testify as an expert witness. *Id.* at 103. Blackledge testified that she had worked as Hatcher's bookkeeper for "10 or 11 years * * *" and had helped him manage his payments to Davidson. *Id.* at 26-27. Her testimony indicated that Hatcher made some payments in cash even after Davidson had begun to use the Square system. *Id.* at 48, 84. Ex. 4, 8, 20. She also testified that she did not have receipts for all of

the cash payments that Hatcher had made over the previous five years.  Oct. 19 Tr. 48-49.

**{¶10}** Blackledge also testified that she observed Hatcher make payments to Davidson using tangible property rather than monies.  Oct. 19 Tr. 43.  She testified that Hatcher gave a van to Davidson pursuant to an agreement that Hatcher receive a $7,500.00 credit in exchange for the vehicle.  *Id*. at 45, 54.  Ex. 3, 21.[3]  In December of 2016, she also observed Hatcher give Davidson an uncut emerald at a meeting at Hatcher's residence.  Oct. 19 Tr. 43-44, 54, 102.  She reported:

> **There was an emerald that was given and then a deal was made, a gentlemen's agreement.  No, it was not written, but it was a handshake, gentlemen's agreement, for an emerald to pay off the house mortgage.**

*Id*. at 94-95.  She affirmed that Hatcher gave the emerald to Davidson with the "understanding * * * it would be used to pay off the house[.]"  *Id*.  Blackledge indicated that the emerald was given to put Hatcher "ahead for payments on the house," but in this portion of her testimony, she characterized these as mortgage payments rather than rental payments.  Oct. 19 Tr. 95-96.  *See Id*. at 102.  She testified that she never observed Davidson return the emerald to Hatcher.  *Id*. at 44.  But she stated that she did "not have a cash receipt for the emerald."  *Id*.

---

[3] The receipt produced as Exhibit 21 seems to indicate that Hatcher was given a $6,000.00 credit for the van.  Oct. 19 Tr. 71.  However, Blackledge stated that correct amount for the credit was $7,500.00.  *Id*.  She testified that credit for the van was supposed to go to Hatcher's arrearage.  *Id*. 71-72.

**{¶11}** Blackledge then testified that, in 2017, she was present at a meeting with Hatcher and Davidson at a local restaurant. Oct. 19 Tr. 41, 55. She stated that, at the meeting, "Davidson was saying that he didn't have the emerald and that it did not pay off the house and that there was a misunderstanding." *Id*. at 55. She testified that "Davidson reneged on the deal. He said the deal was not made, so we had a meeting * * * in 2017." *Id*. at 96. Davidson "said we were still behind." *Id*. Blackledge testified that, at the 2017 meeting, Davidson told Hatcher that the payoff amount for purchasing the residential property that he had leased was roughly $51,000.00. *Id*. at 101-102. She testified that Hatcher was not delinquent on his obligations over the previous five years "because of the other methods of payment." *Id*. at 93-94. *See also Id*. at 95-96.

**{¶12}** On cross-examination, Blackledge was asked how Hatcher obtained the emerald. Oct. 19 Tr. 96-97. She testified that "[i]t came as part of a rock collection that Mr. Davidson is also holding of Mr. Hatcher's." *Id*. at 44. She then explained that Hatcher gave a watch to Davidson as collateral for a $10,000.00 loan to purchase a collection of gemstones and minerals that included the emerald. *Id*. at 96-97. After Blackledge's testimony, the parties engaged in the following exchange:

> **The Court: And these [figures] don't include [the value of] what they're claiming [for] * * * the emeralds, the watch, or the van?**
>
> **[Plaintiff's Counsel]: No, actually, the van—this doesn't include the van because the van was applied * * * prior to 2016.**

**The Court: Is that correct?**

**[Defense Counsel]: Yeah. That's—we're fine with that. Yeah.**

**[Plaintiff's Counsel]: Yeah.**

**[Defense Counsel]: That's what the receipt shows.**

**The Court: All right. So we're talking about the emeralds and the watch.**

**\* \* \***

**[Defense Counsel]: The emerald—the watch, I believe, is related to the loan, not the lease amount.**

**[Davidson]: And that watch was returned in court, as you recall.**

**[Defense Counsel]: Well, but at the time you posted the eviction notice, you had the watch, so it's considered.**

*Id.* at 98-99.

**{¶13}** The Defense then called Larry Cole ("Cole"), a local lapidarist, to provide expert testimony regarding value of the collection of gemstones and minerals. Oct. 19 Tr. 104. Plaintiff's counsel objected to qualifying Cole as an expert witness. *Id.* at 113. However, after hearing Cole describe his experience, the magistrate found that he was qualified to provide expert testimony under Evid.R. 702. *Id.* at 115. Cole testified that he had examined a large, uncut emerald in Hatcher's possession. *Id.* at 110. He stated that this gemstone was 3,800 to 4,500 carats and was worth between $65,000.00 and $75,000.00. *Id.* at 112.

**{¶14}** Hatcher testified that, for some time, he made cash payments to Davidson to fulfill his obligations. Oct. 19 Tr. 132. However, he stated that he had given a van and an uncut emerald to Davidson to cover his obligations. *Id*. at 134, 142, 145. He testified that he gave the van to Davidson in exchange for a $7,500.00 credit because he had fallen behind on his obligations to Davidson. *Id*. at 145. Hatcher stated that he had given an emerald to Davidson at his (Hatcher's) residence as part of an oral agreement. *Id*. at 135-136, 146-147. He reported the following:

> **We discussed that I was—I was approximately * * * $10,000 behind or $11,000 behind at that point, and I think it was something like that. And I said, 'Why don't we squash all this. I'll—I'll make—me and you take this emerald out of this collection. You take it to your house and hold it for collateral until we sell it.' That way I can get on my feet and stop making these payments * * *.**

*Id*. at 136. He further explained:

> **[A]s it was with the van, when I was behind, I felt bad because I considered [him] a friend and I was leaving my friend hanging * * *.**
>
> **I borrowed the money from him to get the [gemstone] collection, to finish purchasing the collection, and I felt obligated to do something right * * *, so I was like, look let's take this emerald, let's go sell this, and that pays for my house.**
>
> **And then we still got this collection, when we sell that we're going to—he was supposed to get five extra thousand dollars back. I was supposed to give him the 10,000 I borrowed, plus 5 as interest.**

*Id*. at 146. Hatcher testified that, when the emerald was sold, "[t]he proceeds were * * * for paying off the house and paying off the $10,000 note and me getting my watch back." *Id*. at 137. *See also Id*. at 156.

**{¶15}** However, Hatcher testified that Davidson "reneged on his agreement * * *" at the meeting in 2017 at the local restaurant. Oct. 19 Tr. 139.[4] He stated that Davidson has not returned the emerald or his larger collection of gemstones and has "got me locked out of my—the building with all my stuff in it." *Id*. at 139, 142. Hatcher stated that Davidson informed him that he needed to pay another $51,000.00 to pay off the house. *Id*. at 138. Hatcher affirmed that he continued to make payments on Square "in an attempt to pay the house off * * *[.]" *Id*. at 144. He testified that he did not break the lease "[b]ecause it's an investment in my home and my properties" and affirmed that "[i]t was his understanding [that he] * * * was purchasing the house[.]" *Id*. at 147. He stated that his agreement with Davidson was not a lease under which he was paying rent but a land contract under which he was making mortgage payments. *Id*. at 148-149.[5]

**{¶16}** On October 25, 2021, the magistrate issued his decision. Doc. 12A, 12B. The magistrate made no determination as to whether Hatcher was "entitled to

---

[4] Hatcher initially testified that this meeting occurred in 2016, though he was unsure of the exact date. Oct. 19 Tr. 133-134, 153. He stated that this meeting could have occurred in 2016 or 2017. *Id*. However, Blackledge testified that this meeting occurred in 2017. *Id*. at 41-43. Because the magistrate mentions the date given by Blackledge in his decision, we will use the 2017 date to refer to this meeting in this opinion. Doc. 12A, 12B.

[5] At trial, the Defense stipulated to the fact that no provision in the written lease agreement for the Greendale Street property stated that the payments made thereunder were to go towards the purchase of the residence. Oct. 19 Tr. 153. Ex. 2.

a deed to the residence and/or ha[d] an equitable interest" in either property, finding these issues were "outside the jurisdiction" of the trial court. Doc. 12A, 12B. The magistrate then concluded that Hatcher had transferred tangible property to Davidson; that Davidson had received this tangible property; and that the value of this tangible property was in excess of the amount by which Davidson alleged Hatcher to be delinquent. Doc. 12A, 12B. The magistrate's decision stated that both of these cases should be dismissed with prejudice. Doc. 12A, 12B. The trial court adopted the magistrate's decision on October 25, 2021. Doc. 13A, 13B.

{¶17} Davidson filed objections to the magistrate's decision on November 8, 2021. Doc. 16A, 16B. He objected to the magistrate's determination that Cole was qualified to testify as an expert; to the finding that the Davidson received tangible property from Hatcher; and to the finding that this tangible property from Hatcher had a greater value than the amount he was alleged to be delinquent in his obligations. Doc. 16A, 16B. On February 18, 2022, the trial court overruled Davidson's objections. Doc. 26A, 26B.

{¶18} Davidson filed his notices of appeal on March 21, 2022. Doc. 27A, 27B. On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**The trial court erred in its conclusion of law qualifying Larry Cole as an expert witness pursuant to the Ohio Rules of Evidence 702.**

**Second Assignment of Error**

**The trial court erred in its conclusion of law finding appellant could not establish damages.**

### Third Assignment of Error

**The trial court erred in dismissing plaintiff's case.**

*First Assignment of Error*

{¶19} Davidson argues that the trial court abused its discretion in finding that Larry Cole was qualified to give expert testimony at trial under Evid.R. 702.

Legal Standard

{¶20} The qualification of an expert witness is governed by Evid.R. 702, which reads as follows:

**A witness may testify as an expert if all of the following apply:**

**(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;**

**(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;**

**(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:**

**(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;**

**(2) The design of the procedure, test, or experiment reliably implements the theory;**

> **(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.**

Evid.R. 702. "A witness is not presumed to be an expert and the party offering the testimony has the burden to show the witness has the qualifications to testify as an expert." *Hartman v. Erie Insurance Company*, 2017-Ohio-668, 85 N.E.3d 454, ¶ 61 (6th Dist.), citing *Tully v. Mahoning Exp. Co.*, 161 Ohio St. 457, 119 N.E.2d 831 (1954), paragraph two of the syllabus. *See State v. Hall*, 3d Dist. Union No. 14-84-6, 1985 WL 7339, *5 (June 27, 1985).

{¶21} "To qualify as an expert, the witness need not be the best witness on the subject." *Scott v. Yates*, 71 Ohio St.3d 219, 221, 1994-Ohio-462, 643 N.E.2d 105, 107 (1994). "There is no requirement that an individual possess a certain educational degree to qualify as an expert; rather, an individual's professional experience and training in a particular field may be sufficient to qualify one as an expert." *Victor v. Kaplan*, 2020-Ohio-3116, 155 N.E.3d 110, ¶ 55 (8th Dist.). "[T]he individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *Levine v. Kellogg*, 2020-Ohio-1246, 153 N.E.3d 663, ¶ 68 (10th Dist.), quoting *State v. Hartman*, 93 Ohio St.3d 274, 285, 2001-Ohio-1580, 754 N.E.2d 1150, 1166 (2001).

{¶22} "The determination of whether a witness is qualified to testify as an expert lies within the sound discretion of the trial court." *Welly v. Welly*, 3d Dist.

Seneca No. 13-15-15, 2015-Ohio-4804, ¶ 23, quoting *Radford v. Monfort*, 3d Dist. Mercer No. 10-04-08, 2004-Ohio-4702, ¶ 5. "Such a determination will not be disturbed absent an abuse of discretion." *Conley v. Wapakoneta City School District Board of Education*, 2022-Ohio-2915, 195 N.E.3d 1061, ¶ 14 (3d Dist.). "Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment." *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29. "A mere error in judgment does not constitute an abuse of discretion." *New Technology Products Pty Ltd. v. Scotts Miracle-Gro Co.*, 3d Dist. Union No. 14-21-22, 2022-Ohio-3780, ¶ 14, quoting *Schwieterman v. Schwieterman*, 3d Dist. Logan No. 8-19-49, 2020-Ohio-4881, ¶ 12. "Rather, a determination that is arbitrary, capricious, or unreasonable is an abuse of discretion." *New Technology Products Pty Ltd.* at ¶ 14, quoting *Schwieterman* at ¶ 12.

### Legal Analysis

{¶23} In his brief, Davidson raises three main arguments to this assignment of error. We will address each of these arguments in turn. First, he argues that the magistrate erred in finding that Cole was qualified to be an expert witness. At trial, Davidson did object to Cole's testimony on this basis and did argue this point in his objections to the magistrate's decision. Oct. 19 Tr. 113. Doc. 16A, 16B. His specific objection was that Cole "sound[ed] like * * * a cutter, not a valuer." Oct. 19 Tr. 113. In response, Cole was asked several questions. *Id*. at 114. He stated

that he was involved in the appraisal of gemstones; that he purchases uncut gemstones from brokers across the world; and that he negotiates prices with brokers on the basis of the value that be believes can be added by cutting the gemstone. *Id.*

**{¶24}** Before Davidson's objections, Cole testified that he had been a lapidarist for around twenty-five years and has run a mostly online gemstone business in that time period. Oct. 19 Tr. 105-106. As part of this business, he has purchased and sold gemstones on the international marketplace. *Id.* at 105, 110. Cole testified that he received training in cutting and working gemstones from his mentor, Don Baker, who was a gem appraiser. *Id.* at 106-107. He also spoke briefly about the concepts that are necessary to determine the value of gemstones. *Id.* at 107. Having examined the materials in the record, we cannot conclude that the magistrate abused its discretion in finding that Cole was qualified to testify as an expert witness under Evid.R. 702 in these cases.

**{¶25}** Turning to his second and third arguments, Davidson argues that Hatcher failed to properly disclose Cole as an expert witness and failed to submit a written expert report from Cole. However, Davidson did not raise either of these arguments in his objections to the magistrate's decision before the trial court. Doc. 16A, 16B. "[I]n a civil case before a trial court, when a party fails to file objections to a magistrate's decision, that party waives the right to later assign as error on appeal the court's adoption of any of the magistrate's findings and conclusions." *State ex rel. Franks v. Ohio Adult Parole Authority*, 159 Ohio St.3d 435, 2020-Ohio-

711, 151 N.E.3d 606, ¶ 9. *See also Longmire v. Danaci*, 2020-Ohio-3704, 155 N.E.3d 1014, ¶ 22 (10th Dist.).

> **'Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.'** *State ex rel. Quarto Mining Co. v. Foreman*, **79 Ohio St.3d 78, 81, [1997-Ohio-71,] 679 N.E.2d 706 (1997), quoting** *Goldberg v. Indus. Comm.*, **131 Ohio St. 399, 404, 3 N.E.2d 364 (1936). A party waives the ability to argue on appeal any error which it could have called, but did not call, to the trial court's attention at a time when the trial court could have avoided or corrected that error.** *Id.*; **accord** *Limle v. Laboratory Corp. of Am.*, **137 Ohio App.3d 434, 437, 738 N.E.2d 890 (10th Dist. 2000) ('The failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal.').**

*Nationstar Mortgage LLC v. Payne*, 2017-Ohio-513, 85 N.E.3d 249, ¶ 19 (10th Dist.). *See also Selbee v. Van Buskirk*, 4th Dist. Scioto Nos. 16CA3777 and 16CA3780, 2018-Ohio-1262, ¶ 51. By failing to object to these issues below, Davidson has waived these arguments for purposes of appeal. Accordingly, we decline to consider these arguments. His first assignment of error is overruled.

### Second Assignment of Error

**{¶26}** Davidson asserts that he carried the burden of establishing damages at trial. He argues that the trial court erred by overruling his objections relating to the magistrate's decision on the issue of damages.

### Legal Standard

**{¶27}** Pursuant to Civ.R. 53(D)(3)(b)(i), "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the

decision." Civ.R. 53(D)(3)(b)(i). "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). "Once objections to the magistrate's ruling are filed, the trial court 'undertakes a de novo review of a magistrate's decision.'" *Longmire, supra*, at ¶ 19 quoting *Meccon, Inc. v. Univ. of Akron*, 10th Dist. Franklin No. 12AP-899, 2013-Ohio-2563, ¶ 15.

> **The trial court must independently review the record and make its own factual and legal findings, but it may rely upon the credibility determinations made by the magistrate. \* \* \* Once the de novo review is complete, the trial court may adopt, reject, or modify the magistrate's decision.**

(Citations omitted.) *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, 964 N.E.2d 492, ¶ 4 (3d Dist.).

{¶28} "Generally, '[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard.'" *Costilla v. Weimerskirch*, 3d Dist. Hancock No. 5-20-12, 2021-Ohio-165, ¶ 8, quoting *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-1726, ¶ 31. "If there is some competent, credible evidence in the record to support the trial court's decision, there is generally no basis for a reviewing court to find an abuse of discretion." *Depinet v. Norville*, 3d Dist. Wyandot No. 16-19-04, 2020-Ohio-3843, ¶ 11, quoting *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002 WL 31114919, *2.

**{¶29}** Further, "[w]hen reviewing a trial court's disposition of objections to a magistrate's report," an appellate court "will not reverse the trial court's decision if it is supported by some competent, credible evidence." *McNeilan v. The Ohio Univ. Med. Ctr.*, 10th Dist. Franklin No. 10AP-472, 2011-Ohio-678, ¶ 20, quoting *O'Connor v. O'Connor*, 10th Dist. Franklin No. 07AP-248, 2008-Ohio-2276, ¶ 16. *See C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), at syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.").

**{¶30}** In determining whether a judgment is supported by competent, credible evidence, "[i]t is axiomatic that considerations of credibility and questions of weight are primarily for the trier of fact, not the reviewing court." *Bryant v. Solis*, 10th Dist. Franklin No. 19AP-380, 2020-Ohio-1249, ¶ 17, quoting *Cooke v. Strader's Garden Ctrs.*, 10th Dist. Franklin No. 95APG08-961, 1996 WL 145496, *6 (Mar. 31, 2020). Generally, a "magistrate * * * [is] 'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Bryant* at ¶ 18, quoting *Cooke* at *4, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

Legal Analysis

**{¶31}** In this assignment of error, Davidson raises three main challenges to the magistrate's decision. We will consider each of these challenges in turn. First, he argues that the magistrate erred in concluding that the tangible property that Davidson received from Hatcher "exceeds any balance that [Davidson] * * * claims as delinquent rent." Doc. 12A, 12B. At trial, Davidson claimed that Hatcher was delinquent in the amount of $20,364.52. Doc. 12A, 12B. Oct. 7 Tr. 28. Ex. K.

**{¶32}** However, Blackledge and Hatcher testified that an emerald was given to Davidson as collateral to cover Hatcher's obligations and that Davidson had not returned this emerald. Oct. 19 Tr. 54, 94, 134, 137. While Davidson denied having the emerald as a form of collateral to cover Hatcher's obligations, the magistrate was free to find the testimony of Blackledge and Hatcher to be more credible. *Id.* at 98-99. Doc. 12A, 12B. *See Habib v. Shikur*, 10th Dist. Franklin No. 17Ap-735, 2018-Ohio-2955, ¶ 19 ("As the trier of fact, the magistrate was free to believe or disbelieve any witness."). Further, Cole also testified that he observed this large, uncut emerald and concluded that this emerald was worth in between $65,000.00 and $75,000.00. Oct. 19 Tr. 112. Based on the testimony at trial, the magistrate could conclude that Davidson had accepted possession of the emerald from Hatcher. The magistrate could also conclude that the value of the emerald ($65,000.00-$75,000.00) exceeds the alleged amount of Hatcher's delinquency ($20,364.52). Ex. K. Accordingly, we find this first challenge to be unpersuasive.

**{¶33}** Second, Davidson argues that the magistrate erred in concluding that he failed to carry the burden of establishing damages in this case. To support this assertion, Davidson points to the documents he prepared and introduced at trial as Exhibit K. Ex. K. Oct. 19 Tr. 18, 33. The figures in Exhibit K are largely based on the records Davidson obtained from Square. *Id.* at 17-18, 25. Davidson alleges that the documents in Exhibit K indicate that Hatcher fell $20,364.52 short of his obligations on the properties on Greendale Street and North Cole Street. *Id.* at 28. Ex. K. However, the Square records document the credit card payments made by Hatcher to Davidson. Oct. 7 Tr. at 17-18, 25, 30. At trial, Hatcher and Blackledge testified that Hatcher had presented Davidson with tangible property to cover his obligations to Davidson. Oct. 19 Tr. 43-45, 137, 142. These transfers were not credit card payments that would be reflected in the Square records. Further, Exhibit K does not mention the transfer of any tangible property or account for the value of any tangible property in the calculations contained therein. Ex. K.

**{¶34}** After hearing the witnesses testify at trial, the magistrate concluded that Hatcher and Blackledge's testimony regarding the emerald was credible and that Davidson's testimony on the same matter was not credible. Doc. 12A, 12B. Thus, the figures in Exhibit K, even if taken as an accurate summary of the payments received through Square, do not present a complete accounting of the value of what was transferred from Hatcher to Davidson. *See* Oct. 7 Tr. 107-108. As an incomplete accounting of the value that was transferred between the parties, the

figures in Exhibit K cannot, by themselves, establish damages under the facts of this case. Further, in resolving the first challenge under this assignment of error, we already concluded that there was some competent, credible evidence to support the magistrate's conclusion that the tangible property transferred to Davidson exceeded the delinquency alleged in Exhibit K. Accordingly, we find this second challenge to be unpersuasive.

{¶35} Third, Davidson reiterates the arguments that he raised under his first assignment of error, asserting that the magistrate should not have considered Cole's testimony as to the value of the emerald. However, we have already concluded that the magistrate did not abuse his discretion in finding Cole qualified to testify as an expert witness in these cases on the issue of the value of the emerald. Based on our conclusion under the first assignment of error, we find this third challenge to be unpersuasive.

{¶36} Having examined the materials in the record, we conclude that some competent, credible evidence exists to support the judgment rendered in these cases. Thus, we cannot conclude that the trial court abused its discretion in adopting the decision rendered by the magistrate. As such, Davidson's second assignment of error is overruled.

*Third Assignment of Error*

{¶37} In this case, the magistrate found that Hatcher was not delinquent when accounting for the value of the tangible property that he had given to

-21-

Davidson. Doc. 12A, 12B. Based on this finding, the magistrate determined that Davidson had failed to carry the applicable burden of proof on the issue of damages and concluded that these cases should be dismissed. Doc. 12A, 12B. The trial court then adopted this decision of the magistrate, overruling all of Davidson's objections. Doc. 13A, 13B, 26A, 26B.

{¶38} Under this assignment of error, Davidson argues that dismissal of these cases was improper for two reasons. First, he asserts that the magistrate should not have considered Cole's testimony in determining the value of the emerald. Second, he asserts that the magistrate should not have counted the tangible property transferred from Hatcher to Davidson against Hatcher's obligations. He raises no other arguments under this assignment of error to establish that the trial court erred in dismissing these cases.

{¶39} However, under the first and second assignments of error, we considered these two arguments and found them to be without merit. Thus, these two arguments have already been decided by our dispositions of the first and second assignments of error. Accordingly, Davidson cannot now rely on these arguments to carry the burden of establishing that the trial court erred in dismissing these cases in this assignment of error. *See New California Woods Homeowners Association v. Jakse*, 3d Dist. Union No. 14-21-04, 2021-Ohio-3783, ¶ 33. As such, his third assignment of error is overruled.

*Conclusion*

-22-

{¶40} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgments of Lima Municipal Court are affirmed.

**Judgments Affirmed**

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**